# THE STATE *v.* LEIGHTON & a.

The defendants were indicted for unlawfully keeping a gaming-place for "money, hire, gain and reward." At the trial it appeared that it was contrary to the rules of the room to game for money, but that it was the general custom, for the party defeated in the game, to pay for the use of the tables, for which the defendants received a shilling per game. *Held*, that this was a gaming for money, within the meaning of the statute, and that the defendants were rightfully convicted of the offence charged.

INDICTMENT, alleging that the defendants at Concord, on the first day of August, A. D., 1851, a certain gaming-place there situate, for money, hire, gain and reward, unlawfully did keep, and in said gaming-place, on, &c., did unlawfully suffer and permit divers idle and ill-disposed persons to game together, and the said persons, in the said gaming-place, on, &c., by the permission and sufferance of the defendants, did play at the game of billiards for money.

At the trial there was evidence, tending to prove that on the twenty-eighth day of July, 1851, the defendants took a lease of a building in Concord, including all its fixtures, among which were three billiard-tables, which had cost $1025.00, and engag-

ed to pay the sum of $800.00, as rent therefor, for one year. Since that time the game of billiards has been constantly play-ed at the tables, and the defendants have received one shilling a game for the use of the tables. All the witnesses testified that it was contrary to the rules of the room to game for money, and that they had never known of any gaming for money, upon the premises. But it also appeared that it had been the general cus-tom in the room for the party defeated in the game to pay for the use of the tables. Upon this evidence the counsel for the defendants contended that there was no evidence tending to prove a gaming for money. But the objection was overruled, and the jury were instructed that it was competent for them to find that there was gaming for money, if they so believed from facts proved, and also that if the defendants received one shil-ling each game for the use of the table, and it was the under-standing of the parties that the one defeated in the play should pay this shilling, and he did pay it accordingly, it constituted a gaming for money within the statute.

The jury found the defendants guilty, and they moved that the verdict be set aside, because of the ruling and instructions of the court.

*Pierce & Minot*, for the defendants.

1. There is no evidence in the case, of any gaming for *money*.

In Tennessee it has been held that proof of gaming for bank-bills would not sustain an indictment for gaming for money. 2 U. S. Digest, " Gaming " ii., 54.

In this case, both parties using the billiard-table were liable for the use of it, and the point was which should discharge the debt.

2. There was no evidence of any gaming. To constitute un-lawful gaming, by the common law, there must be a playing for gain, and this must be the motive and object. And the offence charged by the statute, on which the indictment is founded, and that charged in the indictment, is gaming for money. To con-stitute the offence it must appear that the object of the play,

The State *v.* Leighton.

and that of the player, is money. *The People* v. *Sargent*, 8 Cowen, 139. In that case it was held that playing the rubber, to determine which party should pay for the table, was not gaming.

In this case it is not pretended that the billiard-tables were used except for recreation and exercise.

*George*, county solicitor, for the State.

The third section of chapter 220, Rev. Stat., upon which the indictment is founded, provides that " if any person shall keep any gaming-house or place, and shall suffer and permit any person to play at cards, dice, billiards, or at any bowling alley, or at any game whatever therein, for money, hire, gain or reward, or to bet on the hands or side of such as are so playing, such person shall be punished," &c.

1. The evidence, in the case, was clear that it was the usual custom for the party beaten in the game, to pay for the use of the table.

The shilling per game for the table was the stake played for. Now it could make no difference whether the parties played directly for a shilling a game, or whether they played with an agreement that the losing party should pay a third person such a sum due from the winner to him. In the one case it is a playing for gain, as much as in the other.

2. The case of *The People* v. *Sargent*, 8 Cowen, 139, cited by the counsel for the defendants, was an indictment against Sargent for keeping a billiard-room as a nuisance at common law. The court merely held that playing the rubber was not sufficient to render a billiard-room a nuisance at common law.

3. It seems to be immaterial, so far as relates to this case, whether gaming for bank bills in Tennessee is, or is not, gaming for money, as there is no evidence that bank bills were used in payment for the tables.

GILCHRIST, C. J. In the case of *The People* v. *Sargent*, 8 Cowen, 139, the indictment was for a nuisance at common law, in keeping two billiard-tables. The proof was, that on one oc-

The State *v.* Leighton.

casion there had been playing for money, but that it was usual to play for the rub, that is to say, for the use of the tables, which was one shilling. It is said *per curiam*, that "paying for the table by the rub is not gaming, within the meaning of the law, which makes the house a nuisance. Here is hardly a shadow of gain by either party. Illegal gaming implies gain and loss between the parties, by betting, such as would excite a spirit of cupidity. Experience having shown that this leads to idleness and waste, riot and intemperance, the common law has wisely pronounced it pernicious, and condemned the gambling-house as a common nuisance." Stress is also laid upon the fact, that no disorderly conduct was proved against the defendant; that he allowed no noises, which disturbed the neighborhood, and no betting, but discountenanced the most trifling wagers; and it is said that the only fact, upon which the indictment can rest, is the loser of the rub paying for the use of the table, and this fact alone was held not to make the respondent liable for a nuisance at common law.

But the present indictment is not for a nuisance at common law; and the case of *The People* v. *Sargent* is not in point. The indictment is for a violation of the third section of ch. 220, Rev. Stat., which enacts that if any person shall keep any gaming-house or place, and shall permit any person to play at billiards, among other things, "for money, hire, gain or reward," he shall be punished, &c.

The defendants, in this case, made a profit from the use of the billiard-tables. For the "hire" of them, they were paid a shilling a game. The persons who resorted there played for the hire. In substance they played for a shilling a game. The loser paid and the winner received the sum. By an understanding, among the players, the money won was to be applied towards defraying the expenses of the tables, but still it was money won at play, and upon the chance of the play, and not on any collateral matter. In the case of *Pope* v. *St. Leger*, Salkeld, 344, a question arose, among players at backgammon, whether one of them who had stirred one of his men was bound to move it, on this, a wager of £100.00 was laid, and the ques-

tion was whether this was within the statute against gaming? It was held that this wager was not prohibited by the statute, for it was not on the chance of the play, but on the right of the play, which is a collateral matter. In the present case the money was to be applied to a purpose collateral to that which is the ordinary purpose of playing, when money depends on the event of the play; but still the money depended on the chance of the play. And under the St., 9 Anne, it is the playing for money which makes games unlawful. *Sigel* v. *Jebb,* 3 Stark. N. P. C. 1, *per Abbott, C. J.*

We think the playing was in substance a gaming for money, and are therefore of opinion that the instructions of the court below were correct.

*Judgment on the Verdict.*